IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAIKEEN DIXON,** *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | NO. 25-5756 |
| **WARDEN J. L. JAMISON,** *et al.*, *Defendants* | : : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 JANUARY 12, 2026

Saikeen Dixon, a *pro se* plaintiff incarcerated at the Federal Detention Center in Philadelphia ("FDC"), brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971),[1] against Warden J. L. Jamison, Captain Felix, Special Investigation Service ("SIS") Officer Brandte, and SIS Officer Izzy. In the complaint, Dixon asserts that he was subjected to unconstitutional conditions of confinement while housed in the Secure Housing Unit ("SHU") and seeks prospective injunctive relief. Dixon also filed a motion to proceed *in forma pauperis*. (*See* ECF No. 5.) For the reasons set forth, the Court the motion to proceed *in forma pauperis* is granted and the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

I.  **FACTUAL ALLEGATIONS**[2]

Dixon has been held at the FDC on federal criminal charges.[3] On June 29, 2025, after his criminal trial concluded in a guilty verdict, he was allegedly taken to the SHU. (ECF No. 4 at 4.) Dixon asserts that he remains confined there even though he has not earned misconducts. (*Id*. at 5.) When he arrived on June 29 at the SHU, he was allegedly provided with clothes that had pepper spray on them, which burned his body when he wore them. (*Id*.) Dixon indicates that, while in the SHU, officials denied him recreational time, the use of the law library, religious activities, pictures of family, and all media. (*Id*.)

Dixon alleges that, on September 1, 2025, around 11:30 P.M., SIS officers entered his cell and attacked him and his cellmate. (*Id*.) He claims that he was punched in the ribs, thrown "from my bed to the floor after they punched me," and fell on his "bad leg." (*Id*.) He was then allegedly thrown into the wall and hit his elbow and back. (*Id*.) Dixon claims that SIS Officer Izzy was the person who punched him and that "multiple other SIS officers," including SIS Officer Brundte, were there. (*Id*. at 5, 4.)

Dixon asserts that "Captain Felix and [the] Warden ignored my cries for help," apparently because they ignored his grievances filed through the FDC grievance procedure under BP-8 and

---

[2] The factual allegations set forth in this Memorandum are taken from the Amended Complaint (ECF No. 4) and publicly available dockets. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (the court may consider matters of public record). The Court adopts the pagination supplied to Dixon's filings by the CM/ECF docketing system. Where the Court quotes from the Amended Complaint, punctuation, grammar, and spelling errors are cleaned up where necessary.

[3] Dixon was found guilty on June 16, 2025, of the federal criminal charges of carjacking and using, carrying, and brandishing a firearm during a crime of violence. *See United States v. Dixon*, Crim. A. No. 23-209 (E.D. Pa.) (ECF No. 253). According to the judgment of conviction entered on December 15, 2025, Dixon was sentenced to terms of 63 months on the carjacking count and 84 months on the firearms count, so he is now a convicted and sentenced inmate. *See id.* (ECF No. 326). Dixon still awaits trial scheduled for March 2026 on robbery and theft charges in a separate federal criminal case. *See United States v. Dixon*, Crim. A. No. 23-454 (E.D. Pa.) (ECF No. 245).

BP-9. (*Id.* at 5, 6.) Notably, Dixon acknowledges elsewhere that the Warden denied the grievance. (*Id*. at 7.) Dixon claims that an SIS investigation also disregarded his concerns, and that he "wrote Region N Opr" and the Office of Professional Responsibility, presumably about the issues he raises here. (*Id*. at 8, 7.)

A review of this Court's records shows that Dixon also raised these concerns about his continued confinement in the SHU and the alleged assault by prison officials before United States District Judge Gail Weilheimer, who is presiding over the federal criminal matter, *United States v. Dixon*, Crim. A. No. 23-209 (E.D. Pa.), by filing a *pro se* letter and emergency motion in that case in mid-October 2025. *See id.* (ECF Nos. 299, 300). The government responded in that case by filing the Warden's October 8, 2025, response to Dixon's administrative remedy sought in the prison. *See id.* (ECF No. 304 at 1). In the response, the Warden acknowledged Dixon's claims in his grievance, *i.e.*, that his continued placement in the SHU violated his due process rights and that a threat assessment was conducted unlawfully. *Id.* The Warden related that SIS had conducted a threat assessment investigation, determined that "there was a verified threat with several inmates," and applied "CIM" (Central Inmate Monitoring) separations. *Id*. He noted that Dixon could not be placed in the general population at the FDC because of "the verified threat to [Dixon's] safety." *Id.* The Warden advised the United States Marshal Service of Dixon's status in case it wanted to consider moving him to a different facility, and noted to Dixon that he would remain in the SHU "pending their decisions due to these CIM separations." *Id*.

On October 31, 2025, Judge Weilheimer entered an order directing the FDC to have Dixon's mental health evaluated by November 10, 2025, to determine whether his mental and emotional state would affect his ability to consult with his counsel or prepare for sentencing,[4] and

---

[4] The order directed that the evaluation be shared directly with the Judge and defense counsel. *Id.* (ECF No. 310). Accordingly, the docket does not reflect further entries concerning the evaluation.

3

ordering that defense counsel advise the Court on Dixon's progress after that date every fourteen days. *See id.* (ECF No. 310). On November 14, 2025, Judge Weilheimer denied Dixon's emergency motion (ECF No. 300) because he was "ably represented" by counsel and hybrid representation is not permitted. *Id*. (ECF No. 318 at 1 n.1). The Court explained:

> For that reason, as a formal matter, the Motion is denied. But as Mr. Dixon and his counsel are aware, this Court has reviewed Mr. Dixon's filings and has taken [ ] his concerns seriously. This process is ongoing, and this Court will consider any and all motions filed by [his attorney] on behalf of Mr. Dixon.

*Id.* Dixon was sentenced and the judgment of conviction was entered in that criminal matter on December 15, 2025. *Id*. (ECF No. 326.)

The Clerk opened this civil action on October 6, 2025.[5] (*See* ECF No. 1.) In Dixon's Amended Complaint, he asserts claims for "cruel [and] unusual punishment" and abuse. (ECF No. 4 at 3.) While Dixon did not write anything on the form complaint under "Relief," (*see id.* at 5), his factual allegations express a desire to be released from the SHU. (*Id*. at 5, ¶ D.)

## II.   STANDARD OF REVIEW

The Court will grant Dixon leave to proceed *in forma pauperis* because it appears that he is incapable of paying the ees to commence this civil action.[6] Accordingly, 28 U.S.C. §

---

[5] Dixon's first submission in this matter was a two-page letter asserting allegations about his treatment in the SHU and requesting that a copy of Court's civil rights complaint form be sent to him. (*See* ECF No. 1.) In accordance with the Court's procedures and out of an abundance of caution, the Clerk of Court opened a civil action and docketed the letter as a civil rights complaint. The Clerk sent Dixon the Court's complaint form for unrepresented litigants containing the docket number, and Dixon was instructed to pay the filing fee or submit an application to proceed *in forma pauperis*. (*See* ECF No. 3.) Dixon then returned the Amended Complaint, which became the operative pleading in this case. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

[6] Dixon commenced this action without paying the filing fee or submitting an application to proceed *in forma* pauperis, and he was ordered to do so. (ECF No. 3.) Dixon submitted a motion for leave to proceed *in forma pauperis* consisting of a sworn affidavit attesting that he is unable to pay the costs of

1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Dixon is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

Dixon checked the box on the complaint form indicating that he wants to bring his civil lawsuit against federal officials pursuant to *Bivens*. (ECF No. 4 at 3.) *Bivens* refers to a type of implied cause of action for damages against federal officials. *See Hernandez v. Mesa*, 589 U.S. 93, 99 (2020) (explaining that *Bivens* "broke new ground" by permitting a suit for damages based

---

the proceedings, with a signed certification by a prison official that Dixon's prisoner account balance has averaged $50.00 for the past six months and that he presently had $10.00 in his account at the time of filing. (ECF No. 5 at 3.) He did not provide a separate trust fund account statement under § 1915(a)(2) with his filing. In this instance only, the Court will consider his submissions to be substantial compliance with the requirements of the Prison Litigation Reform Act and will grant him leave to proceed *in forma pauperis* in this action. However, pursuant to that Act, Dixon must still pay the filing fee in installments because he is a prisoner.

on a constitutional violation). However, Dixon does not request money damages in this civil action and the Court understands him to seek only injunctive relief in the form of a transfer into less restrictive housing than the SHU, based upon his constitutional claims of past mistreatment by prison officials.[7] (ECF No. 4 at 5.) Dixon's request for such prospective injunctive relief cannot proceed, however, because his confinement as a convicted prisoner in the SHU does not rise to the level of a liberty interest.[8]

The United States Court of Appeals for the Third Circuit (the "Third Circuit") has reiterated that, in a condition of confinement case, to "rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (emphasis added)). The determination of what is "atypical and significant" is based on the range of conditions an inmate "may reasonably expect to encounter as a result of his or her conviction." *Asquith v. Dep't of Corr.*, 186 F.3d 407, 412 (3d Cir. 1999). Whether a liberty interest exists is governed by a "two-factor inquiry: (1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant

---

[7] To the extent that Dixon wants to challenge the execution of his sentence imposed in No. 23-209, such as his custody classification, he would need to seek relief through a *habeas corpus* petition. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (concluding that a federal prisoner's challenge to the execution of his sentence by the Bureau of Prisons was properly raised in a *habeas* petition under 28 U.S.C. § 2241); *see also Marti v. Nash*, 227 F. App'x 148, 150 (3d Cir. 2007) (*per curiam*) (challenge to custody classification properly raised in a § 2241 petition).

[8] Dixon's Amended Complaint seeks only prospective injunctive relief in the form of a transfer to less restrictive housing. Dixon is now a convicted inmate and, thus, his claim will be analyzed under the standard governing convicted inmates.

The Court also notes that Dixon's allegations that he was subjected to excessive force by SIS personnel is not a plausible *Bivens* claim. The United States Supreme Court recently held that such a claim "'arises in a new context, and 'special factors' counsel against recognizing an implied *Bivens* cause of action for Eighth Amendment excessive-force violations." *Goldey v. Fields*, 606 U.S. 942, 944 (2025).

hardship in relation to the ordinary incidents of prison life." *Williams*, 848 F.3d at 560 (quoting *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)) (concluding that continued housing of death row inmates in solitary confinement after they were granted resentencing hearings, without meaningful review of the continuing placement, gave rise to a protected interest); *see also Shoats*, 213 F.3d at 144 (holding that "virtual isolation for almost eight years" in solitary confinement created a protected liberty interest).

In contrast to prolonged solitary confinement situations, "[t]ransfers from lesser to more restrictive units in a prison" – which, as made clear from the records in his criminal case is what happened here to Dixon – "generally do not implicate a protected liberty interest because some incursions on liberty are to be expected within a prison." *Robinson v. Norwood*, 535 F. App'x 81, 83 (3d Cir. 2013) (*per curiam*) (concluding that federal inmate's indefinite placement in SMU did not subject him to "atypical or significant hardship"); *see also Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (holding that New Jersey prisoners were not deprived of a protected liberty interest when they were placed in the "Security Threat Group Management Unit" where prisoners were consigned to "maximum custody" indefinitely until they completed a "three-phase behavior modification and education program"); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (stating that, "under *Sandin* and *Fraise*, we cannot say that Torres has alleged 'the type of atypical, significant deprivation in which a State might conceivably create a liberty interest' from his confinement in New Jersey's "Security Threat Group Management Unit"); *Noble v. Wetzel*, No. 18-1160, 2019 WL 4279975, at *5 (W.D. Pa. Aug. 1, 2019) (finding confinement in RHU or RRL at SCI-Greene did not implicate liberty interest), *report and recommendation adopted*, 2019 WL 4279016 (W.D. Pa. Sept. 10, 2019), *aff'd*, No. 22-1328, 2022 WL 16707071 (3d Cir. Nov. 4, 2022) (*per curiam*). This is the case even when a change in classification or security is imposed for

7

apparently non-disciplinary reasons, such as the need to separate an inmate from other inmates over institutional security concerns. *See Moz-Aguilar v. United States*, No. 22-804, 2023 WL 4753767, at *5 (M.D. Pa. June 21, 2023) (rejecting federal prisoner's injunctive relief request based on his transfer to USP Lewisburg and placement in SMU without committing any disruptive behavior), *report and recommendation adopted,* No. 22-804, 2023 WL 4748185 (M.D. Pa. July 25, 2023).

According to Dixon, he was housed in the SHU for his own security from other inmates for approximately 120 days.[9] As noted in the cases above, this condition is not atypical of the conditions regularly encountered or expected as a result of his conviction, nor does it exceed his lengthy sentence on the charges of conviction. Yet, even if continuing such a placement could be seen as atypical, a prisoner's due process rights are satisfied where prison officials provide for periodic review of the prisoner's status, which has happened here. *Washington-El v. Beard*, 562 F. App'x 61, 63-64 (3d Cir. 2014) (explaining that prisoner's continued administrative custody and RRL classifications did not violate due process since he received periodic review of his status and his numerous formal and informal challenges to his custody status were regularly reviewed by staff at the institutions); *Shoats*, 213 F.3d at 144 (stating that even if an inmate has stated facts that trigger a protected liberty interest in his RRL status, "an 'informal, non-adversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process") and at 147 (stating that "the periodic reviews conducted by the [Program Review Committee] . . . comport with the minimum constitutional standards for due process."); *see also Bramble v. Wetzel*, No. 20-2394, 2022 WL 55021, at *6 (M.D. Pa. Jan. 5, 2022) (administrative custody and RRL confinement exceeding two years "implicates due process concerns," but granting summary

---

[9] It is unknown whether Dixon remains there as of this date.

judgment for defendants because a sufficient process was provided). Dixon has been afforded ongoing review of his situation both through the prison grievance system and the court system via his criminal matters. (*See* ECF No. 4 at 6-8); *Dixon*, No. 23-209 (ECF Nos. 299, 300, 304, 310, 318). According to the Warden, the prison conducted a risk assessment and verified the threat posed by "several" inmates against Dixon. *Dixon*, No. 23-209 (ECF No. 304 at 1). Dixon had the option to appeal the decision of the Warden. (*Id.*) In addition, Judge Weilheimer was well aware of Dixon's concerns about his housing in the SHU and expressly stated that Dixon's issues were taken seriously and would continue to be addressed, if necessary, through his counsel's motions. *Id.* (ECF No. 318). Because Dixon has not plausibly stated a claim for prospective injunctive relief on the basis alleged in this civil action, and any claim for excessive force is not plausible, his Amended Complaint will be dismissed with prejudice.[10]

---

[10] A with-prejudice dismissal is appropriate because if Dixon were permitted to amend his claim to seek money damages, that claim would not be plausible. No *Bivens* remedy for money damages would exist based on the claims alleged concerning Dixon's placement in the SHU.

The Court understands Dixon to raise constitutional claims challenging the conditions in which he was confined in the SHU while he was still a pretrial detainee, alleging an assault by FDC officials, and claiming Captain Felix and the Warden were responsible under *respondeat superior* for "ignoring Dixon's cries for help" and denying Dixon's grievance. However, the Third Circuit has specifically held that no *Bivens* remedy exists for a prisoner's claims challenging placement or conditions in restrictive housing or claims predicated on abuse suffered at the hands of corrections officers. *Kalu v. Spaulding*, 113 F.4th 311, 327-41 (3d Cir. 2024) (holding that no *Bivens* remedy existed for prisoner's claims based on inhumane conditions of confinement or based on assault by a prison official); *Bistrian v. Levi*, 912 F.3d 79, 94 (3d Cir. 2018) (holding that there is no *Bivens* cause of action for a pretrial detainee's challenge to punitive detention under a more liberal application of *Bivens* in force prior to the United States Supreme Court's further limiting of *Bivens* remedies in *Egbert v. Boule*, 596 U.S. 482, 486 (2022)), *abrogated as recognized in Fisher*, 115 F.4th at 204. *Bivens* also does not permit a remedy against a prison warden based on theories of supervisory liability. *Kalu*, 113 F.4th at 346 ("Allowing Kalu to proceed with his claim against Warden Spaulding, as a supervisor, for his handling of Kalu's sexual assault allegation would invariably invite intrusion administration of federal prison policies—determinations ranging from housing and safety, to discipline and resources."). Accordingly, because Dixon would have no remedy under *Bivens* to pursue any of his alleged claims, there is no basis to permit amendment.

## IV. CONCLUSION

For the foregoing reasons set forth, the Court will dismiss Dixon's Complaint. The Court will not grant leave to amend because Dixon cannot cure the deficiencies in his claims. However, the dismissal is without prejudice to Dixon attempting to raise any claim for *habeas corpus* relief in a separate action. A dismissal Order will be entered separately. *See* Fed. R. Civ. P. 58(a).

*NITZA I. QUIÑONES ALEJANDRO, J.*